**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SEVDIJA NOVOVIC, Administrator** | : | |
| **of the Estate of Rama Novovic, et. al.,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:09-CV-00753** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **GREYHOUND LINES, INC., et. al.,** | : | **Magistrate Judge Norah McCann King** |
| | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Eddie McElfresh's Motion for Summary Judgment.  Having now heard oral argument on the motion, and for the reasons set forth herein, the Defendant's Motion is **DENIED.**

### II. BACKGROUND

#### A.  Factual History

Plaintiffs sue as administrators on behalf of the Estate of decedent Rama Novovic, who was tragically struck and killed by Defendant Eddie McElfresh's vehicle in the early morning hours of August 31, 2007, on Interstate Highway 70 outside New Concord, Ohio.  Prior to the accident, Mr. Novovic had been traveling as a passenger on a bus owned by Defendant Motor Coach Industries, Inc. ("Motor Coach") and operated by Defendant Greyhound Lines, Inc. ("Greyhound").  The bus suffered a mechanical malfunction, causing the bus driver, Defendant Brian Fisher, to pull the bus over into an area between Interstate 70's westbound lanes, and the

Exit 169 on-ramp to Interstate 70.  Mr. Fisher brought the bus to a stop and activated the bus's
four-way flashers.

Upon the passengers' request, Mr. Novovic and others were permitted by Mr. Fisher to
exit the bus to smoke or stretch while they waited for a solution to the bus malfunction.  Mr.
Fisher warned the exiting passengers to stay in the grassy area off to the side of the highway.
Mr. Novovic, however, strayed onto the onramp and was standing roughly in the middle of the
onramp when Defendant McElfresh came traveling up the onramp in his car, and struck him.
The time was about 3:45 a.m. and it was dark outside.  There were no streetlights illuminating
the area where Mr. Novovic was standing.  In addition to the bus's flashing lights, however, Mr.
Fisher had placed two reflective triangles behind the bus and was in the process of placing a third
when McElfresh's car struck Mr. Novovic.  Later that same day, Mr. Novovic died as a result of
his injuries.

Mr. McElfresh was 27 years of age at the time of the accident, and had no identified
impairments to his ability to operate a motor vehicle.  He was quite familiar with this particular
entrance ramp onto Interstate 70, as he drove it every day to work at around the same time in the
early morning.  On the morning of August 31, 2007, once McElfresh turned and began
proceeding up the onramp, he switched off his high beam headlights so that only his low beams
remained on.  As McElfresh approached the end of the onramp where Mr. Novovic was standing,
he had accelerated to a speed of 50-55 miles per hour, and turned his head away from the path in
front of him for a few seconds to check his mirrors for oncoming traffic as he prepared to merge
onto the highway.  When he returned his gaze to the road ahead, he slammed on his breaks to try
to avoid hitting Mr. Novovic, who had suddenly appeared in front of him, but did not swerve to

avoid him because of the numerous other people standing on either side of the road.  McElfresh
was unable to break in time to avoid hitting Mr. Novovic.

The accident was investigated by Ohio State Trooper Keith Roe ("Trooper Roe"), and
later by Mr. Choya Hawn, a Highway Patrol Officer and accident reconstructionist ("Officer
Hawn").  Trooper Roe's traffic crash report indicated that he did not find McElfresh's actions to
have contributed to the crash.  McElfresh Exh. B, at 7.  Upon completion of his accident
reconstruction, Officer Hawn rendered opinions similarly concluding that McElfresh acted
reasonably and could not have avoided colliding with Novovic under the circumstances that
morning.  McElfresh Exh. C, at 2.

### B. Procedural History

Plaintiffs were appointed as administrators of Mr. Novovic's Estate by the Surrogate of
Queens County, New York, on April 3, 2008.  In that capacity, Plaintiffs initially filed actions in
both the Eastern District of New York and this Court.  On August 26, 2009, the case was
consolidated into one action and transferred to this Court.  The Complaint for damages alleges
state law causes of action for negligence and wrongful death against all defendants.  On October
12, 2009, Defendants Greyhound and Fisher filed their Answer, which contained a crossclaim
against Defendant McElfresh for indemnification in the event they are found liable to Plaintiffs.
(Doc. 19).  Defendant Motor Coach's Answer filed shortly thereafter raised a similar crossclaim
for contribution and indemnification against Defendant McElfresh (Doc. 21).

On June 24, 2011, Defendant McElfresh moved for summary judgment on Plaintiffs' and
Defendant Cross-Claimants' claims pursuant to Rule 56 (Doc. 48).  Plaintiffs do not oppose
McElfresh's motion (Doc. 50).  Defendants Greyhound, Fisher, and Motor Coach submitted their

opposition jointly (Doc. 49).  The Court heard oral argument from the Parties on October 21,

2011, and the matter is now ripe for decision.

### III. STANDARD OF REVIEW

The availability of summary judgment in diversity actions is governed by the federal

standard, embodied in Fed. R. Civ. P. 56, rather than by state law.  *Biegas v. Quickway Carriers,*

*Inc.*, 573 F.3d 365, 374 (6th Cir. 2009).  Summary judgment is proper if "there is no genuine

issue as to any material fact [such that] the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  But "summary judgment will not lie if the . . . evidence is such that a

reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a court must

construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant therefore has the

burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-

89 (6th Cir. 1993).

The central inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson*, 477 U.S. at 251-52.  "In reviewing a summary judgment motion, credibility judgments

and weighing of the evidence are prohibited.  Rather, the evidence should be viewed in the light

most favorable to the nonmoving party."  *Biegas*, 573 F.3d at 374 (quoting *Bennett v. City of*

*Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).  But the non-moving party "may not rest merely

on allegations or denials in its own pleading."  Fed. R. Civ. P. 56(e)(2).  *See also Celotex*, 477

U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  The non-moving party

must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. LAW AND ANALYSIS

### A.  Defendant McElfresh's Negligence in Mr. Novovic's Wrongful Death

This Court, sitting in diversity, applies Ohio law in analyzing the Plaintiffs' claims and Defendants' crossclaims in this case "'as announced by that state's supreme court.'"  *Hirsch v. CSX Transp., Inc.,* No. 09-4548, 2011 FED App. 0258N, at *7 (6th Cir. September 8, 2011) (quoting *Miles v. Kohli & Kaliher Associates, Ltd.*, 917 F.2d 235, 241 (6th Cir. 1990)); *see also Erie R. Co v. Tompkins*, 304 U.S. 64, 78.  Regarding Plaintiffs' wrongful death claim,

> "[a]lthough there is no common-law action for wrongful death, R.C. 2125.01 establishes such a claim in Ohio. Under this provision, '[w]hen the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued…shall be liable to an action for damages.'"

*Peters v. Columbus Steel Castings Co.* (2007) 115 Ohio St. 3d 134, 136.

Defendants Greyhound and Motor Coach oppose McElfresh's motion for summary judgment on the basis that genuine issues of material fact exist as to whether McElfresh reasonably should have seen Mr. Novovic in front of him, and should have been able to stop before striking him.  Opposition, at 4-5.  As such, their argument is that McElfresh was responsible for Novovic's wrongful death because of his negligent operation of his vehicle.

Ohio is a "partial comparative negligence" jurisdiction, meaning that a defendant will not be liable to a plaintiff whose fault was 50 percent or more.  *See* O.R.C. § 2307.22.  To create a genuine issue of material fact of Defendant McElfresh's negligence in the death of Mr. Novovic, Defendants must produce sufficient evidence such that a reasonable jury could find that

-5-

McElfresh: (i) owed a duty to decedent Novovic; (ii) he breached that duty; (iii) his breach was a proximate cause of Mr. Novovic's death; and (iv) Novovic suffered compensable damages as a result. *See Hirsch*, 2011 FED App. 0258N at *7.  In this case, Defendants Greyhound and Motor Coach allege that sufficient evidence exists to show that McElfresh's striking Mr. Novovic with his vehicle was negligent per se, "i.e., as a matter of law, [McElfresh] breached a duty that he owed to [Novovic]." *Pond v. Leslein* (1995) 72 Ohio St.3d 50, 53.

## Negligence Per Se

To find McElfresh negligent per se, Defendants Greyhound and Motor Coach must prove that he violated a statute.  Defendants argue that the evidence creates genuine issues of material fact as to whether McElfresh violated Ohio's assured clear distance statute when he drove down the onramp that morning and collided with Mr. Novovic.  Ohio's assured clear distance statute states, in part:

> No person…shall drive any motor vehicle…in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

O.R.C. § 4511.21(A)

If McElfresh was in violation of this statute when he struck Mr. Novovic, he was negligent per se. *See Tomlinson v. Cincinnati* (1983) 4 Ohio St.3d 66, 69 ("The assured-clear-distance statute is a specific requirement of the law, the violation of which constitutes negligence per se.").  Under Ohio law, "a person violates the assured clear distance ahead statute if 'there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible.'"  *Pond*, 72 Ohio St.3d at 52 (quoting *Blair v. Goff-Kirby Co.* (1976), 49 Ohio St.2d 5, 7).

-6-

There is no dispute between the parties here that the first three elements required to find a violation of the assured clear distance statute were met.  At the time he was struck by McElfresh's vehicle, Mr. Novovic was ahead of McElfresh's path of travel, and he was stationary or moving in the same direction as McElfresh.  For the sake of argument on this motion, McElfresh also concedes that Mr. Novovic did not suddenly appear in his path (McElfresh Motion, at 7), so the third element is also established.  Therefore, the only question to be decided is whether a genuine issue of fact exists with respect to the fourth element— whether Mr. Novovic was "reasonably discernible" to McElfresh as he stood in the middle of the onramp.  *Pond*, 72 Ohio St.3d at 52.

### Reasonably Discernible Object

Defendant McElfresh claims that the co-defendants have put forth insufficient evidence to suggest that Mr. Novovic was a reasonably discernible object to him.  In fact, he argues, all the evidence now in the record suggests the opposite.  It is undisputed that it was dark at 3:45 a.m. when Mr. Novovic was hit, and that Mr. Novovic was wearing dark clothing.  Trooper Roe testified that the area surrounding the end of the onramp was completely unlit by either streetlights or any surrounding lighted structures or businesses. McElfresh Exh. B, at 33.  Additionally, Officer Hawn, in his accident reconstruction report, indicates that the slope of the I-70 onramp is ascending, such that the beams of McElfresh's car headlights would not have extended as far as on a flat or downward slope.  McElfresh Exh. C, at 9.

Defendants Greyhound and Motor Coach argue that despite the ample evidence and testimony regarding how dark the area was, and how indiscernible Mr. Novovic likely was, sufficient evidence nevertheless exists to make the question a factual issue for the jury.  As Defendants point out, the fact that it was dark out, the highway was unlit, and the object (Mr.

Novovic) was darkly colored, even all together, still do not necessarily establish that Mr. Novovic was indiscernible as a matter of law.  *See Junge v. Brothers* (1985), 16 Ohio St.3d 1, 3 (holding that "reasonable minds could reach different conclusions as to whether the overturned tractor-trailer was reasonably discernible" where "the dark, unreflective underside of the overturned tractor-trailer was facing traffic…[t]he stretch of highway where this accident occurred was unlit and the night was dark," and "the lights of the overturned tractor-trailer were off").

As a general proposition, "in cases where a collision occurs at night or during weather conditions that reduce visibility, courts hold that a jury question exists as to whether the object the driver struck is 'reasonably discernible.'" *Pond*, 72 Ohio St.3d at 52.  Defendants Greyhound and Motor Coach point to the evidence that McElfresh's car headlights were on; McElfresh had a clear and unobstructed view ahead of him to where Novovic was standing; the disabled bus's four-way emergency flashers were on; and there were reflective triangles on the road near the bus.  Each of these facts serves as conflicting evidence to rebut McElfresh's contention that Mr. Novovic was not reasonably discernible.  When there is "conflicting evidence…as to any one of the elements necessary to constitute a violation of the [assured clear distance] statute, a jury question is created."  *Tomlinson*, 4 Ohio St.3d at 69; *see also See Sharp v. Norfolk & Western Ry. Co.* (1988), 36 Ohio St.3d 172, 175 ("particularly where conflicting evidence is introduced regarding whether an object is reasonably discernible on a highway during nighttime hours, a judgment of a jury is required.").

Defendant McElfresh argues in response that the co-defendants failed to provide any contradicting evidence or rebuttal to Officer Hawn's expert opinion that McElfresh was driving reasonably and could not have avoided hitting Mr. Novovic under the circumstances.  McElfresh

Reply, at 2.  While it is true that little, if any, of the proffered expert testimony appears to suggest Defendant McElfresh was negligent, it is the role of the jury, not this Court, to weight the credibility and weight of that expert testimony.  *See United States v. Glover,* 265 F.3d 337, 345 (6th Cir. 2001).  At summary judgment, any conflicting evidence contradicting the experts' view must be taken in favor of the nonmoving parties.  *Matsushita*, 475 U.S. at 587. Defendants Greyhound and Motor Coach are not obligated to provide an expert who can contradict the conclusions in McElfresh's favor arrived at by Officer Hawn to survive summary judgment.  All they need to do is point to "more than a scintilla" of evidence that Mr. Novovic was reasonably discernible, and they have done that.  *See Hirsch*, 2011 FED App. 0258N, at *6.

McElfresh contends that there is no evidence or testimony to suggest he should have seen the bus's flashing lights, for example.  The sheer *existence* of the bus's flashing lights within a close proximity to Novovic alone, however, is enough to provide some conflicting evidence, albeit admittedly slim, of Novovic's discernability.  The bus was stopped right next to the onramp, in the space between the onramp and I-70, and so its flashing lights would have been positioned just yards from where Mr. Novovic was standing.  The conflicting evidence supporting reasonable discernability need not amount to much to create a triable issue of fact on that question.  In *Blair v. Goff-Kirby Co.* (1976), 49 Ohio St.2d 5, the Supreme Court of Ohio cited evidence that a party did not see the object in his path until he "was practically in it" as *support* for the determination that the discernability of the object was a question for the jury.  49 Ohio St.2d at 10; *see also Shinaver v. Szymanski* (1984) 14 Ohio St. 3d 51, 54 ("Finally, there is no question but that the tractor-trailer with which plaintiff collided was 'reasonably discernible' to him, since he testified that he actually saw it before he applied his brakes.").  McElfresh

testified that he did see "the gentlemen" (sic) in front of him at some point before he struck him. McElfresh depo, at 52.

Defendant McElfresh offers a wealth of additional evidence, again mostly from Officer Hawn's conclusions, to support that Mr. Novovic was the proximate cause of the accident, being the party best situated to avoid it, and so forth. McElfresh Motion, at 5. However, while this evidence may serve to diminish the amount of negligence and/or liability ultimately assigned to McElfresh by the jury, *see Hitchens v. Hahn,* (1985) 17 Ohio St.3d 212, 214, on this issue of negligence per se, to survive summary judgment Defendants Greyhound and Motor Coach need only show that enough evidence exists to suggest Mr. Novovic may have been "reasonably discernible" pursuant to the statute. *Tomlinson*, 4 Ohio St.3d at 69. Evidence of reasonable care at this point is irrelevant.

There can be little doubt that Mr. Novovic would not have been easy to see. He was wearing dark clothing and standing on a dark, unlit stretch of road. McElfresh did have his headlights on, however, and concedes he saw Mr. Novovic in advance of striking him, but because of the speed of his car and the other pedestrians nearby he could not avoid hitting him. McElfresh Motion, at 3. The bus's four-way flashing lights and the reflective triangles placed by Mr. Fisher also plausibly could have served to render Mr. Novovic more discernible. These facts show that Mr. Novovic was at least somewhat visible to McElfresh, and while "the mere fact of collision does not equal a violation of R.C. 4511.21 in every case," *id.*, there is enough evidence here to create a triable issue as to whether Mr. Novovic was reasonably discernible, and thus whether McElfresh was negligent per se in striking him. Therefore, summary judgment is inappropriate.

**Sudden Emergency**

In his motion, Defendant McElfresh appears to raise the "sudden emergency" exemption
(to which the nonmoving defendants respond) to violating of the assured clear distance statute,
*see, e.g., Shinaver v. Szymanski* (1984), 14 Ohio St.3d 51, 54, drawing support from Officer
Hawn's conclusion in his accident reconstruction that "Mr. Novovic presented a sudden
emergency for Mr. McElfresh beyond the 'point of no escape.'"  McElfresh Exh. C, at 8.  Ohio
law, however, has incorporated the sudden emergency doctrine into the third prong of the test for
a violation of the assured clear distance statute, *see, e.g., Pond*, *supra*, which accounts for the
complete absence of cases affirming the doctrine for the past quarter-century, except in the
context of a sudden *medical* emergency.  *See, e.g., Roman v. Estate of Gobbo* (2003), 99 Ohio St.
3d 260, 261 ("Where the driver of an automobile is suddenly stricken by a period of
unconsciousness which he has no reason to anticipate and which renders it impossible for him to
control the car he is driving, he is not chargeable with negligence as to such lack of control.").
Part of establishing a violation of the assured clear distance statute requires proving that the
driver collided with an object which did not "suddenly appear in the driver's path." *Pond*, 72
Ohio St.3d at 52.  As stated above, Defendant McElfresh conceded this third element of the test
for negligence per se under that statute.

**V. CONCLUSION**

Defendant McElfresh has failed to show that, as a matter of law, Mr. Novovic was not
"reasonably discernible," and therefore has failed to show that no genuine issue of material fact
exists on the question of his negligence per se in his accident with the decedent.  The Court

accordingly declines to grant summary judgment in Defendant McElfresh's favor, and his

motion is **DENIED**.

   **IT IS SO ORDERED.**


                                        <u>**s/Algenon L. Marbley**</u>
                                        **Algenon L. Marbley**

**DATED: November 14, 2011**