**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SEVDIJA NOVOVIC, Administrator** | : | |
| **of the Estate of Rama Novovic, et. al.,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:09-CV-00753** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **GREYHOUND LINES, INC., et. al.,** | : | **Magistrate Judge Norah McCann King** |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## ORDER ON PARTIES' MOTIONS IN LIMINE AND PRETRIAL OBJECTIONS

### I.  PLAINTIFF'S MOTIONS

**A.  Plaintiffs' Motion in Limine to Exclude Witness Statement of Vera Henson (Dkt. 86)**.

Plaintiffs move the Court to preclude the admission of the written statement of Vera

Henson taken August 31, 2007, and contained in the Traffic Crash Report of the Ohio Highway

Patrol, in which she recounts her eye-witness version of the collision between Mr. McElfresh's

vehicle and the decedent.  Plaintiffs argue that while the traffic report itself may be admissible as

a public record under Fed. R. Evid. 803(8)(c), Ms. Henson's statement within the report

constitutes an additional layer of hearsay under Rule 801(c), does not qualify under any

exceptions to hearsay allowing its admissibility.

Defendant Greyhound  offers "numerous" permissible bases for admitting Ms. Henson's

statement notwithstanding its hearsay character.  First, Greyhound argues that statements made

out-of-court offered simply to demonstrate that they were made are not hearsay in the Sixth

Circuit, relying on *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 378 (6th Cir. 2009).

Second, Defendant claims that statements warning others are not hearsay if offered to show that

a listener was on notice, or to show its affect on the listener.  Third, Defendant argues that this Court has held in *Grimm v. Lane*, 895 F. Supp. 907 (S.D. Ohio 1995) that out of court statements are not hearsay when admitted with an investigative report and used to support the conclusions in the report.

Assuming for the sake of this motion that the accident report is admissible as a public record under Rule 803(8)(c), Ms. Henson's statement contained therein nevertheless requires its own basis for admissibility.  *See Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994) ("'[A statement of a third party] is plainly not admissible merely because contained in a police report.'") (citations omitted).  As an out-of-court statement, Greyhound may not offer the statement for its truth.  Fed. R. Evid. 801(c).  Ms. Henson's statements taken down in the report, which include that "the man that was hit was standing in the middle of the street;" "I seen the lights of the car and yelled at the man that it was coming;" and "the man that was hit was wearing all black," are not of the sort offered merely to show "that it was said," *Biegas*, 573 F.3d at 378, or merely to show that decedent was on notice or should have been alerted.  Rather, the statement is Ms. Henson's eye-witness account of the events, providing various factual propositions about the circumstances of the collision.

Finally, while in Officer Roe's deposition, he lists the fact that "other occupants, by statements, tried to get their attention," as a part of the basis for his conclusion that the decedent's "inattentiveness" contributed to the accident, this case is distinguishable from *Grimm*, where the court admitted an expert report with statements "to help the jury understand what [the expert] based her findings and analysis upon." *Grimm*, 895 F. Supp. at 914.  In *Grimm*, the expert's entire purpose in preparing her report had been to interview inmates and "outline concerns" at the prison facility, making the third-party statements gathered within integrally

-2-

supportive and explanatory of what her conclusions were based upon.  Here, the single notation of "inattentiveness" by Roe is but one small aspect of the multifaceted and lengthy accident report.  While part of Ms. Henson's statement may be something Roe relied upon for that finding, it would be pure fiction to suggest that the substance of the statement is necessary to help the jury's understanding of what Roe based that finding on.  Moreover, as already mentioned, the Court makes no ruling at this time as to the admissibility of the report as a whole, and so in the event the report is admitted, the statement of Ms. Henson can simply be redacted.

The Motion is **GRANTED.**

**B.  Plaintiffs' Motion in Limine to Preclude any Evidence or Reference to the Muslim Faith of Plaintiffs and their Decedent and to Preclude Evidence or Reference to the Immigration Status of Plaintiffs' Decedent (Dkt. 87).**

### 1.    *Evidence of Muslim Faith*

Plaintiffs first move to exclude any references or evidence of the Muslim religious faith of the Plaintiffs and/or the decedent.  Plaintiffs argue the religious affiliation of decedent and Plaintiffs is not relevant to any issues in this personal injury case, and should therefore be excluded.  The Court finds no relevance of the religious affiliation of the decedent or the Plaintiffs to this case.  Since evidence of the plaintiffs' and decedent's status as Muslims does not make any fact in issue more or less probable, it is irrelevant and inadmissible.  Fed. R. Evid. 401, 402.  As Plaintiffs point out, the evidence is also inadmissible as a basis for impeachment under Rule 610.

The Motion is **GRANTED** with respect to evidence of the Muslim faith.

> **2.** ***Evidence of Immigration Status***

Plaintiffs also move this Court to preclude any evidence of the decedent's immigration status at the time of his death, arguing that it is not relevant to any issues at trial, *see* Fed. R. Evid. 401, and to the extent that it may be relevant, it should nevertheless be excluded under Fed. R. Evid. 403 because its probative value is far outweighed by the danger of unfair prejudice. Defendants argue that the jury has a right to know that the decedent was here illegally and was possibly subject to deportation, as the information is relevant and material to the issue of damages claimed by Plaintiffs for decedent's loss of future earnings, and loss of consortium. Defendants argue the evidence of decedent's immigration status is highly probative, and not substantially outweighed by any unfair prejudicial impact it might have.  Fed. R. Evid. 403.

Discovery revealed that Mr. Novovic was living in the U.S. illegally, his tourist visa having expired, and that he did not have a green card.  Additionally, Greyhound's briefing reveals that prior to his death, the Second Circuit had upheld and vacated any stay on the previously ordered removal order of the decedent by the Board of Immigration Appeals. *Novovic v. Keisler*, 251 F. App'x 40, 42 (2d Cir. 2007).  In the jury's evaluation of the decedent's potential future lost earnings, Defendants' argue that the evidence that Mr. Novovic could have been deported will mitigate the amount he could have earned in the future.  On the issue of loss of consortium, Greyhound argues that decedent's immigration status made it less likely that his family was ever going to be able to reunite with him in the United States, which would tend to mitigate this area of damages as well.

As permitted under Ohio's wrongful death statute, O.R.C. § 2125.02, Plaintiffs claim damages for the decedent's future lost earnings, and hired an expert economist, Dr. John Burke, whose expert report calculates what decedent's lost earnings would likely have been had his life

not been tragically ended early.  In his report, Dr. Burke uses U.S. sources for statistics and calculates the earnings based on U.S. dollar figures.  Defendants also claim damages for loss of consortium.  Compl. ¶ 24.

This Court has recently stated, in a tort action for recovery of damages for personal injury, that "at a minimum, it is clear that Plaintiffs immigration status is relevant to his claim for los future wages."  *Davila v. Grimes*, No. 09-cv-407, 2010 WL 1737121, at *3 (S.D. Ohio Apr. 29, 2010).  Although federal case law is not entirely settled on this issue, in this case, where Plaintiffs offer expert testimony on the damages calculation of decedent's lost future earnings using U.S. figures and data, the facts that the decedent was no longer in the country legally at the time of death and had deportations proceedings pending against him, are relevant to the assessment of damages for lost future earnings.

The probative value of the evidence is not substantially outweighed by any undue prejudice that might arise from the jury's knowledge of decedent's immigration status.  The Court is aware that "immigration is a politically sensitive issue," and risks improperly biasing the jury against decedent.  *See Salas v. Hi-Tech Erectors*, 230 P.3d 583, 586 (Wash. 2010).  However, even in the *Salas v. Hi-Tech Erectors* case from the Supreme Court of Washington, which Plaintiffs rely on for its holding that "the risk of unfair prejudice brought about by the admission of a plaintiff's immigration status is too great" to allow its admission, *id*. at 587, the court acknowledged that the evidence is relevant on the issue of lost future damages and suggested that if deportation proceedings had actually been initiated, as had been in Mr. Novovic's case, their holding may have been different.  *See id.* at 585-86.

The evidence may also be introduced for the purposes of mitigating the damages claimed for loss of consortium by the plaintiff family members of the decedent.  Evidence of the quality

of the spouses' relationship with each other is relevant to rebut a claim for loss of consortium.
*See, e.g., Ramadan v. Metrohealth Med. Ctr.*, 2011 Ohio App. LEXIS 48, at **6 (Ohio Ct. App.
Jan. 13, 2011) (Stating that previously "this court held that the plaintiff's 'claim of loss of
consortium obviously is rebuttable by evidence dealing with her spousal relationship'") (internal
citations omitted).  Given that the information will already be admitted for the loss of future
earnings issue, there is little risk of further undue prejudice from allowing its introduction for the
loss of consortium damages issue as well.  The evidence could make it more or less likely that
Plaintiffs would have enjoyed the decedent's comfort, society, guidance, and consortium in the
future had he not been killed, and could therefore factor into the amount of damages awarded for
those categories.  The evidence is relevant and admissible on the issue of Plaintiffs' loss of
consortium damages.

The Motion is **DENIED** with respect to evidence of the decedent's immigration status.
Such evidence is admissible on the issues of damages for future loss earnings and loss of
consortium, only.

## C.  Plaintiffs' Motion in Limine to Preclude the Greyhound Defendants from Utilizing Matthew Daecher as an Expert at Trial (Dkt. 92).

Plaintiffs move the Court to preclude the testimony of Defendant Greyhound's liability
expert, Matthew Daecher, at trial because he was not timely designated by Defendants by the
deadline for case-in-chief experts.  Greyhound argues that Mr. Daecher is a rebuttal witness to
Plaintiffs' liability expert, Jack Burkert.  Additionally, Defendant contends that even if Mr.
Deacher is deemed a case-in-chief witness, his late disclosure was substantially justified and
harmless as Plaintiffs have had plenty of notice of his testimony and will not be prejudiced by it.

The modified pretrial orders from the Court designated March 1, 2011 as the expert disclosure deadline, and May 1, 2011 as the rebuttal expert disclosure deadline.  Plaintiffs identified three primary experts by March 1, 2011: Jack Burkert, Transportation Safety Consultant, John Burke, economist, and Dr. Jeff Lee, coroner.  Defendant McElfresh likewise timely designated expert Choya Hawn, accident reconstructionist, by March 1, 2011.  Greyhound did not designate any experts until May 2, 2011 (May 1st fell on a Sunday), at which time they identified Matthew Daecher, Transportation Safety Specialist, as an expert.

Fed R. Civ. P. 26(a)(2)(D) provides that parties must make expert disclosures "at the times and in the sequence that the court orders."  The Court's May 19, 2011 Preliminary Pretrial Order could not have been clearer with regard to which experts are rebuttal experts that were permitted by the second disclosure deadline: "Rebuttal/Responsive experts are strictly limited to rebutting unanticipated opinions expressed by a primary expert."  (Dkt. 39.)  In its briefing, Greyhound conveniently omits the wording from the Federal Rules of Civil Procedure's description of rebuttal experts.  The Rule describes rebuttal experts as those offering testimony "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party *under Rule 26(a)(2)(B) or (C)*."  Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).  Rule 26(a)(2)(B) and (C) refer to expert witness disclosures, and thus the Federal Rules suggest that a proper rebuttal witness's report must be "solely" rebutting evidence on a subject matter identified in the conclusions of another party's expert.  *Id.*

Defendants now assert that they retained Mr. Daecher to refute Plaintiffs' expert, Jack Burkert's report.  However, while Mr. Daecher lists Dr. Burke's report as one of many materials he relied on in forming his conclusions, (Daecher Report, at 1), Mr. Daecher's report does not specifically rebut any of Plaintiffs' experts.  In fact, Mr. Daecher's report does not even *mention*

Mr. Burkert's findings, throughout. Moreover, Mr. Daecher himself admitted that nothing in the report of Plaintiffs' expert Jack Burkert was unanticipated. (Dkt. 92 Exh. 5, at 34-36). Mr. Daecher's own testimony suggests that his report is more truthfully that of a primary expert, which should have been disclosed by Defendants no later than March 1, 2011.

Greyhound's proposed basis for Mr. Daecher being a rebuttal witness is that he rebuts Plaintiffs' chosen "theory of liability" in the case. This broad interpretation of the scope of rebuttal witnesses would carve out a rule that would never require defendants to disclose any of their experts in time to meet the deadline for primary experts. The Court does not accept that Mr. Daecher is a rebuttal expert merely because his conclusions tend to rebut some of Plaintiffs' theories of Greyhound's liability.

Defendants' late disclosure of Mr. Daecher violated the deadlines imposed by the Court's orders, and a strict adherence to those orders would result in his testimony being precluded. Nevertheless, this Court is not one to exalt form over substance. Although Mr. Daecher's disclosure was late and his report was not properly targeted at rebutting Mr. Burkert's report, the substance of Mr. Daecher's opinions and conclusions largely constitute the inverse of those expressed by Mr. Burkert respecting Greyhound's and Brian Fisher's liability and negligence. Plaintiffs acknowledged at the pretrial conference that they have had the opportunity to depose Mr. Daecher, and have not suffered any specific prejudice by his disclosure as a rebuttal, as opposed to primary, expert. In the absence of prejudice to the Plaintiffs, and in the Court's abiding interest of presenting the jury with as much relevant material as possible with which to make an informed decision, the Court will allow Mr. Daecher's testimony notwithstanding Greyhound's late disclosure.

The Motion is **DENIED.** Mr. Daecher's expert testimony will be permitted at trial.

**D. Plaintiffs' Motion in Limine to Preclude Greyhound from Utilizing Various Witnesses at the Time of Trial (Dkt. 129).**

Plaintiffs move to preclude the following six Greyhound witnesses from appearing at trial:

1. Sergeant M. Warner, an Ohio State Trooper that assisted in investigating the accident.

2. Vera Henson, a Greyhound bus passenger and eyewitness to the accident;

3. Dennis Cordial, an adjuster investigating this accident on behalf of Greyhound;

4. Paul Wright, Greyhound employee;

5. Bobby Quinten, Greyhound employee; and

6. Al Smith, Greyhound employee.

Plaintiffs claim that Greyhound's failure to identify these witnesses prior to January 9, 2012 is prejudicial to Plaintiffs and constitutes unfair surprise. Plaintiffs propounded a set of interrogatories on Greyhound on July 27, 2010. Plaintiffs submit that Greyhound should have identified the above-mentioned witnesses in its responses to Plaintiffs' interrogatories nos. 6 and 12, which requested the names and information of any witnesses who had knowledge of the events of the accident as well as the names of any lay witnesses Greyhound intended to call at trial, respectively.

The Court's October 21, 2011, Order Setting Trial Date required non-expert witnesses to be identified no later than January 9, 2012. Greyhound complied with this Order with respect to the above mentioned witnesses. Additionally, in its responses to Plaintiffs interrogatories, Greyhound stated that it "reserve[d] the right to call any of the individuals listed and identified in the Ohio State Highway Patrol Report." The OHP Report identifies, at least in some way, the

above witnesses Vera Henson, Sergeant M. Warner, and Dennis Cordial.  Greyhound's responses to Plaintiffs' interrogatories also instructed Plaintiffs to refer to the reports of its adjusters, Frontier Adjusters, which Greyhound had provided to Plaintiffs.  Dennis Cordial was one of the adjusters investigating the accident on behalf of Greyhound.  Plaintiffs were therefore on notice of Greyhound's intent to utilize those persons and could have elected to depose them.

With respect to the three employees from Greyhound, Paul Wright, Bobby Quinten, and Al Smith, which Greyhound did not in any way identify prior to January 9, 2012, Greyhound clarifies that it only intends to call one of those three individuals to testify about Greyhound's training policies and procedures, depending on their respective availability.  Greyhound insists that when Plaintiffs propounded their interrogatories requesting the names of Greyhound's prospective witnesses, Greyhound was still discerning which witnesses it would call and did not know that these three individuals would be among them.  Further, Greyhound argues that even if its disclosures were somehow deficient or untimely, the failure must have been harmless because Plaintiffs did not object to the sufficiency of their responses to interrogatories 6 and 12 until the instant motion, after the close of discovery.  Greyhound's argument is misguided, however, because even if it is true that at the time Plaintiffs propounded their interrogatories Greyhound did not anticipate calling any of the three employees listed, it still had an affirmative duty to supplement its responses once it had decided to call the witnesses.

Besides Greyhound's duty to respond fully and accurately to Plaintiffs' interrogatories, "[a] party is required to identify, as part of its Rule 26 initial disclosures, all individuals 'likely to have discoverable information … that the disclosing party may use to support its claims or defenses ….'" *Boyer v. Home Depot U.S.A., Inc.*, No. 08-13382, 2010 U.S. Dist. LEXIS 28992,

at *4 (E.D. Mich. March 26, 2010); Fed. R. Civ. P. 26(a)(1)(A)(I). Additionally, Rule 26(e) requires timely supplementation of initial disclosures or other discovery requests.[1]

Greyhound should have identified the three employees it intends to call for testimony on its training practices and policies before the eve of trial, particularly in light of Plaintiffs' pointed discovery request for that information. Plaintiffs would be prejudiced by Greyhound's failure to supplement its responses if the witnesses were able to testify because Plaintiffs were not afforded an opportunity to depose the witness beforehand. *See Boyer*, 2010 U.S. Dist. LEXIS, at *7 (striking late responses to discovery containing newly identified witnesses, "because of what appears to be either the plaintiff's attorney's lack of diligence in identifying [the individual] as a witness or the plaintiff's failure to timely make [the witness's] identity known to his attorney, the defendant was denied the opportunity to depose [the witness] and thereby test the statements made in the affidavit"). Plaintiffs' decision not to seek additional corporate deposition testimony from Greyhound from one of these witnesses pursuant to Rule 30(b)(6) does not obviate Greyhound's responsibility timely to disclose its intended witnesses.

The Motion is **GRANTED**, in part, and **DENIED**, in part. Greyhound is permitted to use Vera Henson, Sergeant M. Warner, and Dennis Cordial as witnesses at trial. Greyhound is precluded from offering the testimony of Paul Wright, Bobby Quinten, or Al Smith at trial.

---

[1] Rule 26 states:
> (e) Supplementation of Disclosures and Responses.
>   (1) In General.
>    A party who has made a disclosure under Rule 26(a)-or who has responded to an interrogatory, request for production, or request for admission-must supplement or correct its disclosure or response:
>      (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing….

**E.  Plaintiffs' Motion in Limine to Compel Greyhound to Produce Certain Witnesses (Dkt. 136).**

Plaintiffs move for an Order from the Court compelling Greyhound to produce witnesses Carol Fisher, Ken Miller, Frank Ashby, and Gary Post for trial testimony, or alternatively, an order compelling the witnesses to appear and testify via simulcast from courthouses near their places of residence.  Plaintiffs' counsel has served subpoenas *ad testificandum* for Mr. Post and Mr. Ashby on Greyhound at its Cleveland, OH office for their appearances at U.S. district courthouses in Chicago, IL, and Dallas, TX, respectively.  Additionally, Plaintiffs' counsel has filed a proof of personal service of a trial subpoena on Ms. Fisher commanding her appearance at the U.S. District Courthouse in Pittsburgh, PA (Dkt. 155), and maintains that he intends to serve Mr. Miller with a trial subpoena personally, also for appearance at Pittsburgh.

Mr. Ashby and Mr. Post are current employees of Greyhound.  Ms. Fisher and Mr. Miller are no longer employees of Greyhound.  Greyhound produced all four of these witnesses for deposition testimony, but now denies that it must produce them for trial.  Greyhound argues that the subpoenas, if they were actually served, are deficient, and the witnesses cannot be compelled to appear as they reside more than 100 miles from the Southern District of Ohio courthouse from which the subpoenas were issued.  Additionally, Greyhound insists that their testimony is not necessary for trial.

Federal Rule of Civil Procedure 45 provides the rules and mechanisms for securing a nonparty's testimony or production of documents, and requires that the individual be effectively served with a subpoena.[2]  Even if a subpoena is served on a witness, Rule 45 provides that the court must, upon a timely motion, quash or modify a subpoena that "requires a person who is

---

[2] "This rule applies to subpoenas *ad testificandum* and *duces tecum* issued by the district courts for attendance at a hearing or a trial, or to take depositions."  Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules.

neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3).

Pursuant to Rule 45(c)(3), none of the witnesses at issue will be required to appear for testimony in person in Columbus, OH, as they all reside more than 100 miles from the courthouse. The other courthouses which have been contacted to provide for live simulcast testimony are within the 100 mile radius of each witness's home, however, so the Rule, which protects witnesses "from undue burden or expense," will not be offended by utilizing this more reasonable alternative. *See* Fed. R. Civ. P. 45(c)(1).

With respect to the current employees of Greyhound, Mr. Ashby and Mr. Post, they are party agents under the control of Greyhound and must be produced for testimony, as they have been timely identified on Plaintiffs' witness list and Greyhound has been served with subpoenas for their appearances at trial. Greyhound already produced these witnesses for their depositions, and was on notice that they might be required for trial testimony. Moreover, compelling the appearance of an "officer, director, or managing agent" of a party to the action does not even require a subpoena. *See EEOC v. Honda of Am. Mfg., Inc.*, No. 2:06-cv-0233, 2007 U.S. Dist. LEXIS 14496, at *5 (S.D. Ohio Feb. 28, 2007) (stating that a subpoena is only required "for other employees" who are not "directors, officers [or] managing agents" of a corporate opponent). Mr. Ashby is a Fleet Coordinator for Greyhound, and Mr. Post is a Regional Safety Manager. These positions fairly qualify them as "managing agents" of Greyhound. *See id.* at *6 (holding that the burden for proving the employee's status in the company "has been described as 'modest' and may require nothing more than a showing that it is a 'close question' as to whether the needed relationship exists"). As such, the Court need not reach the validity of Plaintiffs' subpoenas in determining the current employees should be produced for testimony.

With regard to former employees Ms. Fisher and Mr. Miller, Greyhound argues that the Court cannot compel it to produce these witnesses and the subpoenas must be quashed under Rule 45, because the subpoenas were served outside the Southern District as the parties reside more than 100 miles from the trial courthouse.  Witnesses who are no longer employees of Greyhound are not parties, and must be individually and personally served with a subpoena to compel their appearance even at the alternative courthouses.  *See* Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy *to the named person*. . . .") (emphasis added).  Plaintiffs, therefore, cannot move this Court to compel Greyhound to produce nonparties who are no longer in its employ.

Greyhound, in turn, may not challenge or move to quash the subpoenas of the nonparty witnesses, either.  As stated by the Northern District of Ohio, "[t]he law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty." *Donahoo v. Ohio Dept. of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002); *see also J.B. Hunt Transport, Inc. v. Adams*, No. 04-CV-70347-DT, 2007 WL 789042, at *2 (E.D. Mich. March 14, 2007).  Indeed, "[t]he party to whom the subpoena is directed is the only party with standing to oppose it." *Id.*

Plaintiffs' counsel has represented that he has accomplished service on Ms. Fisher with a subpoena for her appearance at trial and is still attempting to serve Mr. Miller.  Absent a timely objection or motion to quash brought by the parties "to whom the subpoena is directed," *id*., the Court will enforce the subpoenas, and the witness or witnesses will be compelled to appear for live testimony at the federal courthouse in Pittsburgh, PA.  If Mr. Miller is not successfully served, Plaintiffs must utilize his deposition testimony as an alternative.

While Greyhound claims that the witnesses' testimony is not necessary, Plaintiffs understandably disagree.  The Court recognizes the preference for live testimony at trial over the

-14-

use of depositions or other written statements.  *See Hickson v. Astrue*, No. 09-CV-940, 2010 U.S. Dist. LEXIS 68029, at *24 (N.D. Ohio July 8, 2010) (citing 2 McCormick on Evidence § 245 at 94 (4th ed.1992)).  In light of the considerable cost and inconvenience that would be imposed on these out-of-state witnesses if they were to be compelled to appear in this district, Plaintiffs have, in good faith and in consideration of their duty to "avoid imposing undue burden or expense on a person subject to the subpoena," arranged the possibility for remote testimony.  *See* Fed. R. Civ. Pro. 45(c)(1).  The Court has been informed by its staff that the witnesses will be able to testify via video simulcast technology from those courthouses in Chicago, Dallas, and Pittsburgh.

The Motion is **GRANTED**. Greyhound is **ORDERED** to produce its employees, Mr. Ashby and Mr. Post, for live telecast testimony at the designated federal courthouses in Chicago, IL, and Dallas, TX, respectively.  Ms. Fisher is **ORDERED** to appear for live telecasted testimony from the federal courthouse in Pittsburgh, PA on the date of her examination, to be designated by Plaintiffs.  If Plaintiffs accomplish effective service of a trial subpoena on Mr. Miller, he will be ordered to appear at Pittsburgh as well.  Plaintiffs are to give Defendants 24 hours notice of the date each witness will be required to appear.

## II.  DEFENDANT GREYHOUND'S MOTIONS

### A.  Greyhound's Motion in Limine to Preclude any Evidence or Argument that the Decedent Experienced any Conscious Pain or Suffering (Dkt. 104).

Greyhound moves the Court to preclude evidence or argument that decedent Mr. Novovic experienced conscious pain and suffering in the timeframe between when he was initially struck and injured by Mr. McElfresh's vehicle and when he passed away shortly thereafter because there is insufficient evidence on the record to warrant presentation of that claim for damages by Plaintiffs at trial.  Defendants therefore submit that any reference to

-15-

decedent's pain and suffering would be irrelevant and inadmissible under Fed. R. Evid. 401 and 402, and unfairly prejudicial under Rule 403. Plaintiffs argue that Mr. Novovic's estate is entitled to recover for decedent's pain and suffering between injury in death, and that they have evidence to support such an argument.

Ohio law provides for recovery by a decedent's estate in wrongful death actions for the conscious pain and suffering of the decedent. *See* O.R.C. § 2125.02; *Flory v. New York C. R. Co.*, 163 N.E.2d 902, 905 (Ohio 1959) ("Physical or bodily pain and suffering in consequence of a wrong occasioning an injury to the person is a proper element of damages, but allowance can be made only for pain and suffering of which the injured person is conscious.").

Greyhound acknowledges that a jury may award damages for this class of pain and suffering of a decedent, but argues that Plaintiffs have not provided, as they must, affirmative evidence suggesting that the decedent was conscious after being hit. The Court rejects Greyhound's argument. Plaintiffs provide examples of multiple eyewitnesses who, in their sworn testimony, reportedly observed the decedent exhibiting behavior suggesting consciousness and pain after he was hit. A material issue of fact exists as to whether, and to what degree, the decedent experienced conscious pain and suffering in the interim between injury and death. The competing evidence and testimony referred to by the parties in their briefing on the instant motion will provide the jury with a basis for assessing the appropriate damages for decedent's pain and suffering, should any be awarded.

The Motion is **DENIED**.

**B.  Greyhound's Motion in Limine to Preclude the use of Plaintiffs' Deposition Testimony at Trial (Dkt. 106).**

Greyhound moves to preclude the use of the telephonic deposition testimony of Sevdija Novovics, Jasmin Novovic, Mujo Novovic, and Ujkan Novovic (collectively, "Plaintiffs") at trial on the basis that neither of the two interpreters used at their depositions was qualified under the requirements of the Federal Rules of Evidence and the Administrative Office of the United States Courts, and Greyhound was not given an opportunity to conduct a *voir dire* of the interpreters. Greyhound cites various other irregularities at the depositions which, it claims, also warrant their exclusion.  Defendant McElfresh joins Greyhound's Motion on the same grounds.  (Dkt. 131).

Plaintiffs reside in the nation of Montenegro and speak Bosnian.  Their depositions were taken telephonically on April 7, 2011.  Greyhound's first complaint is that, because the scheduled interpreter was late, the decedent's brother-in-law, Smajlje Srdanovic acted as interpreter both before and after the scheduled interpreter arrived.  No *voir dire* was conducted to assess Mr. Srdanovic's qualifications as an interpreter, nor is he believed certified or qualified under the Court Interpreter's Act ("CIA") and the Guide to Judicial Policy's standards. Greyhound further complains that the scheduled interpreter was also not subjected to a *voir dire* to establish her qualifications and/or certification.   Greyhound insists that since neither interpreter's qualifications were established, as mandated by Federal Rules of Evidence 604 and 702 and , the Plaintiffs' depositions are void and inadmissible and should be excluded from use at trial.

Fed. R. Evid 604 states that "an interpreter must be qualified and must give an oath or affirmation to make a true translation."  Greyhound does not challenge either interpreter on the basis of a deficient oath.  The CIA provides that "[t]he Director of the Administrative Office of

the United States Courts shall establish a program to facilitate the use of certified and otherwise qualified interpreters in judicial proceedings *instituted by the United States*."  28 U.S.C. § 1827(a) (emphasis added).  This is a civil case, and therefore the interpreter qualification guidelines under the CIA do not apply.  *See* Guide to Judicial Policy, Vol. V § 210.10 ("Judicial proceedings instituted by the United States include all in-court criminal proceedings and any in-court civil proceeding in which the United States is the plaintiff.").

The Guide to Judicial Policy states that "[i]nterpreter services needed to assist parties to civil proceedings, both in court and out of court, are the responsibility of the parties to the action."  *Id.* at § 260.  Greyhound is the party that hired the scheduled interpreter, and when she was late in reporting to the deposition, Greyhound apparently agreed to allow Mr. Srdanovic to act as an interpreter in her place.  The Court will not preclude the deposition testimony of a party's key witnesses who are unavailable for testimony based on the alleged potential deficiencies with the qualifications of an interpreter that the opposing party hired.  Moreover, while not the ideal, other circuits have found that in some cases it may be necessary to appoint a family member of the witness as an interpreter.  *See United States v. Ball*, 988 F.2d 7 (5th Cir. 1993) (finding no abuse of discretion where the witness's wife was permitted to serve as an interpreter).  For these reasons, the Plaintiffs deposition testimony will not be excluded, and Plaintiffs may use it in lieu of live testimony assuming the witnesses are unavailable.

The Motion is **DENIED.**  Plaintiffs may use the witnesses' deposition testimony at trial. Defendant McElfresh's Objection to these depositions is also **OVERRULED.**

**C.  Greyhound's Motion in Limine to Preclude any Evidence or Argument Related to Loss of Prospective Inheritance (Dkt. 108).**

Greyhound moves to preclude evidence or argument related to Plaintiffs' loss of prospective inheritance resulting from Mr. Novovic's premature death.  Greyhound acknowledges that Ohio's wrongful death statute provides for recovery by a decedent's heirs for lost prospective inheritance.  *See* O.R.C. §§ 2125.02(A)(1), (B)(4).  However, Greyhound argues against allowing argument on that issue here because there is no evidence that the plaintiff heirs to Mr. Novovic's estate had any expectation of receiving an inheritance, nor evidence that Mr. Novovic had any assets to his name when he died.

Greyhound admits that the recovery for prospective inheritance is related to that of lost future earnings, "as they are both future economic losses."  Motion, at 4.  Greyhound's argument for precluding argument on this issue, however, has to do with a lack of evidence of Mr. Novovic's *preexisting* assets.  Firstly, this is not true, as some evidence of Mr. Novovic's financial circumstances has been provided.  Moreover, as Plaintiffs point out, the more relevant inquiry for a claim of lost prospective inheritance would be the decedent's estimated future asset gains had he not been killed, which is similar to the loss of future earnings category.  Given the Court's ruling, *infra*, that Plaintiffs' economist expert, Dr. Burke, will be permitted to testify regarding decedent's lost future earning capacity, the Court is inclined to allow the expert to explain his conclusions as they relate to any lost prospective inheritance as well, and allow the jury to evaluate its weight.

The Motion is **DENIED**.

**D. Greyhound's Motion in Limine to Preclude any Testimony Regarding the Decedent's State of Mind at the Time of the Accident (Dkt. 110).**

Greyhound moves the Court to preclude any testimony regarding the decedent's state of mind at the time of the accident. Specifically, Greyhound argues that testimony about the decedent's inability to understand verbal warnings due to his status as a non-native English speaker is inadmissible under Fed. R. Evid. 602, because no witness at trial can competently testify to the decedent's subjective state of mind in that moment, including what he did or did not comprehend prior to being struck. Plaintiffs argue that since Officer Keith Roe indicated in his traffic report that "inattentiveness" was a contributing factor to the accident, he should be able to explain what he means by that.

Fed. R. Evid. 602 provides that:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Lay witnesses, under Rule 602, will not be permitted to testify as to whether Mr. Novovic understood verbal warnings being shouted at him. *See, e.g., Visser v. Packer Engineering Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (holding that lay inferences or opinions must be "grounded in personal knowledge or experience" and cannot be "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience"). Of course, this does not preclude witnesses from testifying that such warnings were made. Moreover, as decedent's surviving family are presumably knowledgeable of decedent's language skills based on their own experience, testimony as to decedent's ability to understand English generally will not be precluded.

Regarding Officer Roe's testimony explaining his investigative report, Plaintiffs argue that to the extent that his conclusion in the report regarding decedent's contributory "inattentiveness" goes to decedent's state of mind, he should be permitted to explain what he meant, because (i) he is a qualified expert traffic investigator under Rule 703 to which Rule 602 does not apply, or (ii) alternatively, because of the Sixth Circuit precedent finding the personal knowledge requirement inapplicable to police investigative reports admitted under the public records exception of Rule 803(8).  As to Officer Roe qualifying as an expert, Rule 702 provides the basic standards for a witness to testify as an expert:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Although a "trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and [the court's] action is to be sustained unless manifestly erroneous," *United States v. Jones*, 107 F.3d 1147, 1151 (6th Cir. 1997), the Court is not satisfied, based on the Plaintiffs' one-sided briefing, alone, that Officer Roe qualifies as an expert.  However, "Officer [Roe's] training and experience may well ultimately qualify him as an expert," as courts have held in similar contexts.  *See Dortch v. Fowler,* No. 05-CV-216-JDM, 2007 U.S. Dist. LEXIS 41615, at *9 (W.D. Ky. June 6, 2007) (also involving an officer's investigative report made following a traffic collision).  Plaintiffs may attempt to qualify Officer Roe as an expert at trial,

in which case he would be able to opine on the facts, conclusions, and opinions within the investigative report.

Additionally, "recent Sixth Circuit opinions . . . clearly establish that 'the personal knowledge requirement does not extend to official reports admissible under Rule 803(8).'" *Weinstein v. Siemens*, No. 07–CV–15000, 2010 WL 4824952, at *3 (E.D. Mich. 2010) (citing *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009) and *Combs v. Wilkinson*, 315 F.3d 548, 555–56 (6th Cir. 2002)). Thus, if the OHP investigative report is admitted under Rule 803(8) as an official report, Officer Roe's testimony explaining his notation of "inattentiveness" is permissible, because "[o]pinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(C) exception." *Bank of Lexington & Trust Co. v. Vining–Sparks Sec., Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168–69 (1988)). Officer Roe, being one of the individuals who personally prepared the report, may testify from firsthand knowledge as to why he made certain notations.

The Motion is **GRANTED** in part. Lay witnesses will not be permitted to testify as to whether Mr. Novovic understood verbal warnings being shouted at him. Officer Roe will, however, be permitted to explain his conclusions in the investigative report if it is admitted under Rule 803(8).

**E. Greyhound's Motion in Limine to Preclude Expert Witness John Burke's Testimony at Trial (Dkt. 139).**

Greyhound moves to preclude the expert testimony of Plaintiffs' retained economist, Dr. John Burke, at trial as irrelevant and unreliable because Mr. Burke's report only uses U.S. statistical data and fails to account for the decedent's immigration status. Mr. Burke was timely

identified by Plaintiffs as an expert on the issue of calculating the lost economic value resulting

from decedent's death.

      Rule 702 provides the basic standards for a witness to testify as an expert:

      A witness who is qualified as an expert by knowledge, skill, experience, training,
      or education may testify in the form of an opinion or otherwise if:

        (a) the expert's scientific, technical, or other specialized knowledge will help
     the trier of fact to understand the evidence or to determine a fact in issue;
        (b) the testimony is based on sufficient facts or data;
        (c) the testimony is the product of reliable principles and methods; and
        (d) the expert has reliably applied the principles and methods to the facts of the
     case.

Fed. R. Evid. 702.

      The Supreme Court has interpreted Rule 702 as requiring the district court to perform a

gate-keeping function to "ensure that any and all scientific testimony or evidence admitted is not

only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Under *Daubert*, the following factors bear upon the reliability of an expert's testimony: (i)

whether his theory or technique has been tested; (ii) whether the theory or technique has been

subject to peer review and publication; (iii) whether the technique has a high known or potential

rate of error; and (iv) whether the theory or technique enjoys general acceptance.  *Id.* at 592.

When the proffered expert testimony, as here, is not scientific in nature, the district court must

nevertheless still perform the gate-keeping function.  In *Kumho Tire Co. Ltd. v. Carmichael*, 526

U.S. 137, 150 (1999), the Supreme Court held that the *Daubert* factors "may or may not be

pertinent in assessing reliability, depending on the nature of the issue, the expert's particular

expertise, and the subject of his testimony.*" Id.*  The *Daubert* factors are not the most

"reasonable measures of reliability" in this case.  *Nelson v. Tennessee Gas Pipeline Co*., 243

F.3d 244, 251 (6th Cir. 2001).   Burke's economic valuation testimony instead requires a more

generalized assessment of whether it is "based on sufficient facts or data" and whether Dr. Burke "has reliably applied the principles and methods to the facts of the case." *See* Fed. R. Evid. 702.

Dr. Burke is a Ph.D economist, and has testified as an expert many times using the methodology he employs in his report on Mr. Novovic's lost economic value. The Court accepts that Dr. Burke is qualified as an expert on these issues and his methodology is generally reliable in its principles and methods. Fed. R. Evid. 702. Moreover, the testimony will undoubtedly "assist the trier of fact to understand . . . [facts] in issue" pertaining to Plaintiffs' damages. *Id.* Importantly, however, the Court has ruled, *supra*, that the decedent's immigration status is relevant to rebutting claims of damages for lost future earnings and loss of consortium. Dr. Burke's report does not appear to have accounted at all for the possibility, which seems likely, that decedent would not have remained in this country for an extended period of time due to his expired U.S. visa and the deportation proceedings pending against him. Dr. Burke's oversight in failing to account for the immigration status of Mr. Novovic, and the fact that decedent may not have been able to earn money in the United States for much longer, may undercut the reliability of his conclusions regarding the earning potential of Mr. Novovic through the end of his life.

In *Pirolozzi v. Stanbro*, 73 Fed. R. Serv. 3d (Callaghan) 766 (N.D. Ohio 2009), the court examined the admissibility of an expert economist in a wrongful death case who had failed to consider multiple significant factors bearing on the reliability of his conclusions. There, the plaintiffs' expert had failed to "factor in the decedent's disability at the time of death" or deduct personal consumption from the calculation of lost earning capacity, among other things. The court ruled that, particularly in light of the defendants' ability to cross examine the expert, "these issues go to the weight of [the expert] testimony, not the admissibility of their testimony." *Pirolozzi*, 73 Fed. R. Serv. 3d, at *19.

This Court has ruled that Defendants may introduce the evidence of decedent's immigration status on the relevant issues of lost future earnings and loss of consortium. They will have the opportunity to cross-examine Dr. Burke on his failure to consider this relevant fact bearing on what Mr. Novovic would have been able to earn. Thus, as in *Pirolozzi*, the Court will allow Dr. Burke to testify, subject to Defendants' cross-examination.

The Motion is **DENIED**. Plaintiffs' expert economist, Dr. Burke, will be permitted to testify.

### III.     OBJECTIONS

**A. Plaintiffs' Objections to Greyhound's Deposition Designations (Dkt. 120).**

Regarding Plaintiffs' listed objections to Greyhound's designated portions of depositions for presentation at trial, the Court rules as follows:

1.  Keith Roe – Plaintiff complains that Greyhound's designations are piecemeal, and do not provide enough introductory material. Plaintiffs intend to call Officer Roe as a live witness, but if Officer Roe is for some reason unavailable to appear, Plaintiffs will be permitted to offer additional, more extensive portions of his deposition for fairness and completeness.

2.  Gary Post – Defendants have been ordered to produce Mr. Post for live testimony, *supra*.

3.  Carol Fisher – Plaintiff seeks to omit designated lines at p. 29:1-14 of Ms. Fisher's deposition. This portion is unrelated colloquy between attorney and witness will be stricken.

4.  Ken Miller – The Court has ordered, *supra*, that if Mr. Miller is properly served with a subpoena, he must appear for live testimony.

**B. Defendant Greyhound's Objections to Plaintiffs' Deposition Designations (Dkt. 137).**

Regarding Greyhound's timely listed objections to Plaintiffs' designated portions of depositions for presentation at trial, the Court rules as follows:

1.  Ken Miller – Greyhound's objection on the basis of speculation is preserved.

2.  Carol Fisher – The additional sections at pp. 57:25-58:4 shall be read in addition to those designated by Plaintiffs, for completeness.

3.  Frank Ashby – Greyhound objects to designated portions, pp. 14:21-17:10, on the basis of hearsay.  These portions involve Mr. Ashby's testimony about conversations he had with fellow Greyhound employees, Brian Fisher and Eddie Smith.  As such, the statements are all statements of the agents of a party-opponent within the scope of that employment, and are not hearsay under Fed. R. Evid. 801(d)(2)(D) when offered by the Plaintiffs.  The objection is **OVERRULED**.

4.  Gary Post – Greyhound objects to the reading of pp. 42:8-43:9 of Mr. Post's deposition based on irrelevance, as there is no evidence that Mr. Fisher did not comply with Highway Patrol during the investigation.  The witness's statements about Greyhound's standard "safety rules" and instructions for drivers to follow after an accident are relevant to whether Greyhound is negligent in its training of drivers.  The objection is **OVERRULED**.


**IT IS SO ORDERED.**


**s/Algenon L. Marbley**
**Algenon L. Marbley**

**DATED: January 26, 2012**